## HAYES *v.* MORRISON.

Costs upon a judgment rendered in an action *ex contractu,* are to be apportioned among the several judgment debtors in proportion to the shares, which, as amongst themselves, they are respectively bound to contribute towards the debt.

No contribution is to be had among several judgment debtors on account of expenses incurred in defending the suit in which the judgment was rendered, unless the parties between whom contribution is sought agreed to bear the expenses jointly.

In case a general agreement is made to share future expenses which are indefinite, no action lies in favor of either party against the other to recover his share of the joint expenses, until they have accounted together, or until the account has been presented, and its adjustment demanded. If the agreement extends only to a definite liability for a sum certain, no demand is necessary.

ASSUMPSIT, upon the general counts, for money lent and advanced, paid, laid out and expended, had and received, and for interest on money due from the defendant.

The plaintiff's specification is for cash lent in September, 1852, $75, and interest thereon.

Plea, the general issue, with a set-off, consisting of three items :

1. Cash paid by the defendant for the plaintiff, in September, 1852, on a judgment recovered by J. Pendergast against the parties and two others, $94.81.

2. Cash paid for witnesses' fees in defending the action in which said judgment was rendered, $8.75.

3. Cash paid N. & G. N. Eastman, for services as attorneys in said action, $9.85.

It appeared in evidence that the parties, Francis Hayes and David Morrison, together with John Walker and Daniel Morrison, built and owned a saw-mill, as tenants in common; Hayes contributing and owning one half, Walker one fourth, and the Morrisons each one eighth; and that they used and occupied the mill according to the proportion of their several interests in it; Hayes six days, Walker three, and the Morrisons each one and a half in every twelve working days, and each supplying oil, files, &c., while he thus occupied. One John Pendergast had been employed by the four owners to build the mill on their joint account, and he had recovered judgment against them, at the September term, 1852, for his labor and services; the amount of the debt in the judgment being $276.82, and of the costs $758.44. Soon after the suit was commenced by Pendergast, Hayes and one of the Morrisons consulted counsel in regard to a defence, and their legal liabilities for the costs of the suit, and received from counsel the opinion that the costs would be divided among them, according to their several interests in the mill. It appeared that this was the understanding among all the parties during the pendency of the suit, and that Hayes said he expected to pay one half of the costs, but that there was no special agreement that the costs should be thus divided. After the rendition of the judgment, the four judgment debtors, being about to pay the amount to Pendergast, were informed by other counsel that in his opinion they were legally bound to pay the costs in equal proportions, each his one fourth, without regard to their several

shares in the mill. The amount of the judgment debt was thereupon paid by them in the proportion of their respective interests in the mill, and the costs rendered in the judgment were equally divided among the four, each paying one fourth part. Hayes, the present plaintiff, then let the defendant Morrison have seventy-five dollars in cash; and the evidence tended to show that the defendant then agreed to see the plaintiff and pay him the money, or in some way adjust it the next week.

The first item in the set-off is the difference between one fourth and one eighth of the costs, and interest thereon; being the amount paid by the defendant towards the cost more than his one eighth part. The other two items are for cash paid by him to procure the attendance of witnesses, and for services of counsel in making defence to the Pendergast suit. The payment of these several sums by the defendant was admitted. It appeared that the mill-owners had never settled among themselves as to the sums paid out by them respectively, on account of the expenses incident to the defence of that suit; and it did not appear that any demand had ever been made by the now defendant, upon either of the other three defendants in the Pendergast suit, for payment of any share of those expenses, or for a settlement as to the respective amounts paid by each.

A verdict was taken by consent for the plaintiff, for the seventy-five dollars, and interest thereon, upon which judgment is to be rendered; or if the set-off or any part thereof should be allowed to the defendant in this action, the verdict is to be set aside, and judgment entered for either party, and for such sums as this court may order.

*H. A. Bellows,* for the defendant.

It being conceded that the plaintiff was bound to pay one half of the damages recovered, we hold that he was bound to pay one half of the costs, which are but an incident.

The defence of the suit was the joint act of all the defendants, and for their joint benefit, though not in equal proportions. Had the defence prevailed, it would have been for the plaintiff's benefit, in proportion to that of the defendant, as four to one. If the plaintiff, as between him and the defendant, had been alone interested, he must have paid the whole. *Hawes* v. *Martin,* 1 Esp. 162; 2 Stark. Ev. 102. It is manifestly equitable that the plaintiff should pay of the costs in proportion to his interest. *Fletcher* v. *Graves,* 11 N. H. 368; *Boardman* v. *Paige,* 11 N. H. 431. On the subject of contribution, there is no distinction between the debt and costs, where the defence was the joint act of the parties. *Davis* v. *Emerson,* 5 Shep. 64. In that case the share of each surety in the debt determined the share of the costs.

In this case the plaintiff and defendant stand in the relation of sureties, each for the other's portion.

The case of *Graham* v. *Robertson,* 2 T. R. 282, shows that the share of the costs depends upon that of the debt. The defence was prosecuted with this understanding, and it must be deemed that the expenses were incurred upon that basis. The amount paid by the defendant for the plaintiff on this judgment was the excess of the sum paid over one eighth part of the whole judgment. For this the defendant has his right of action, and the obligation of the plaintiff to refund is not affected by the fact that the defendant paid it under a claim by the plaintiff that he was bound to pay it. Morrison was bound to the creditor to pay the whole, and had he done so his claim for contribution against Hayes could not have been impaired by any denial of his obligation to contribute at all.

*G. N. Eastman,* for the plaintiff.

The evidence is clearly sufficient to sustain the verdict, as it shows that the seventy-five dollars were loaned upon a promise to repay.

As to the set-off, there was no agreement among the four defendants to the original suit that the plaintiff in this should pay one half of the costs. Whatever "understanding" there might have been to that effect, it must be regarded as an understanding founded upon a mere loose supposition that this was his liability by force of law, and not by virtue of any agreement to that effect. The set-off is claimed on the ground that the money was paid under a mistake of law. There was no such mistake. The defence to the Pendergast suit was a common matter, in which all were equally interested. Each should, therefore, bear an equal proportion of the expense. The defence was precisely the same thing to each. Upon what principle can the court say that they should bear the expense in different proportions? It had no relation to the individual ownership, like the construction of the mill, but was based upon the fact that each felt himself called upon to resist an unjust claim, and thus all stood on equal ground. Besides, the mill-owners had never come to a settlement, and adjusted their respective payments towards the expense. In this respect they stand as partners, and no one can have a cause of action against either of the others until, upon a final adjustment, it is found who has paid more than his share and who less; Ch. Con. 218; *Gibson* v. *Moore*, 6 N. H. 547; and this applies to all the items of the set-off, the first no less than the other two.

SAWYER, J. There is sufficient evidence in the case to sustain the verdict, if the set-off upon the facts is not to be allowed. The facts stated that the plaintiff let the defendant have seventy-five dollars, and that there was evidence tending to show that the defendant agreed to see the plaintiff and pay him the money, or in some way adjust it in the course of the next week, are clearly sufficient to warrant a jury in finding that the money was loaned upon a promise to repay it. The verdict, therefore, must stand,

unless there is competent evidence to support some one or more of the items of the set-off.

The first item is for cash paid on the judgment recovered by Pendergast. It was recovered by him against the parties to this suit, and two others jointly; and as to the costs rendered in the judgment, was paid equally by the four judgment debtors. Each of the four was liable to the creditor to pay the whole amount of the judgment costs, as well as debt, while, as between the four debtors, they were bound to pay both in respect to the costs and the debt, in proportion to their respective shares in the debt; that is, in proportion to their several shares in the mill. The costs must be regarded as incident to the debt. Upon the question of contribution, they cannot be distinguished from it. The failure to pay the debt which occasioned the costs is to be imputed to all who were liable, and sued; and the extent of their neglect is to be measured by the respective proportions which they were bound to pay in reference to each other at the time of suit brought. They were bound to contribute each his proper share towards the debt; and the costs which resulted from their neglect to pay the debt must be apportioned among them in proportion to the measure of neglect imputable to them. The same equitable principles which govern in the case of contribution among co-promissors, in reference to the debt for which they are jointly liable, equally apply in the case of costs rendered in judgment against them jointly for the non-payment of their joint debt. This view is sustained by the principles recognized in the case of *Fletcher* v. *Grover*, 11 N. H. 368, and in *Boardman* v. *Paige*, 11 N. H. 431. The position is sustained by *Davis* v. *Emerson*, 17 Me. 64, which is in point.

When, therefore, the defendant paid with his own money the judgment for the costs to the extent of one fourth part of the whole amount, he paid it to relieve himself and the other three judgment debtors from a common burthen,

which, as among themselves, they were bound to sustain in proportion to their respective shares in the debt. Walker, one of the four, having paid one fourth part of the whole cost, satisfied the judgment to the extent to which he was bound to contribute, in order to relieve himself and his co-debtors from the common burthen. The plaintiff was bound to contribute one half of the whole amount. He paid but one fourth, and his other one fourth was paid by the defendant and the other debtor, Morrison, together, each contributing one eighth of the whole towards the share which the plaintiff was bound to pay. The defendant, therefore, paid to that extent, that is, one eighth of the whole, for the benefit of the plaintiff. Nor is the position of the parties in reference to the question of contribution at all affected by the fact that when the money was paid, the parties supposed they were paying according to their just proportions. The payment was compulsory. In making payment to the extent of one fourth instead of one eighth, the defendant, as to himself and the creditor to whom the payment was made, satisfied his own debt to that extent. The whole amount of the judgment was a debt against him, which the creditor had the power to compel him to pay, regardless of the obligation of the others to contribute. If he had paid the whole, either with or without the understanding that he had a remedy over against the others for the whole or any portion of the money paid, it would have been in either case equally the application of his own money to pay his proper debt, as between him and the creditor. If he was otherwise entitled to such remedy, it would not be lost merely because he paid the debt with the understanding that the law did not afford him such remedy. Even his express agreement with the other debtors to pay it as his own, as between him and them, would not change the character or consequences of the payment, unless it was founded upon a legal consideration, thus constituting a new contract be-

Hayes *v.* Morrison.

tween him and them, by which he undertook to relieve them from the debt and assume it as his own. The payment, therefore, though made by the defendant with the understanding that it was to the extent of his share and no more, was in fact, beyond that; and so far as it exceeded that, was in fact a payment made by one judgment debtor for another, in a case where contribution is to be had.

No demand is necessary for the recovery of money thus paid in discharge of a specific liability. It was the duty of the plaintiff to have paid it to the defendant immediately. The relation existing between co-promissors in such case is such that the law implies a request by the plaintiff to pay the money on his account, and he was bound to refund it without demand. The bringing of the suit is a sufficient demand.

The other items of the set-off stand on different ground. They are for advances or payments made on account of the charges and expenses incurred in prosecuting the defence to the action in which the judgment was recovered. If there is to be contribution between the parties to this suit, on account of payments made by the defendant, as specified in the last two items of the set-off, it is not because they were jointly liable, or were made co-defendants in that action, but because the parties, or they together, with the other two defendants in that action, agreed among themselves to unite in the defence, and bear the expenses jointly. In the absence of any agreement to that effect, either of the parties, incurring expense in defending the suit, would incur it on his own account. The fact that others had a common interest with him in the defence would not of itself authorize him to incur expense upon their joint account. If the action had been for a tort, in which case no contribution could be had among the judgment debtors, their agreement to conduct the defence upon their joint account would have rendered the necessary and proper expenses of the defence their joint debt, for the

Hayes *v.* Morrison.

payment of which contribution might have been had, as in other cases upon contract. But whether the action were for a tort or *ex contractu*, the only ground upon which contribution could be required for the expenses incurred in the defence is, that the parties among whom contribution is sought, agreed to make it on their joint account. It is not stated in the case whether such agreement existed or not between these parties, and that fact is material. Without the finding of that fact the court cannot hold, as a conclusion of law, that the last two items are to be allowed. There is, perhaps, evidence in the case, competent to be submitted to a jury upon the question, but it should have been passed upon by them, or the fact that there was or was not such agreement should have been stated.

But upon another ground the claim of the defendant under the last two items may be disposed of, even if it be assumed in his favor that the agreement existed. The fact is found that the mill-owners never had a settlement among themselves, as to the expenses incurred in the defence of the Pendergast suit; and it did not appear upon the trial that any demand was ever made by the defendant upon the plaintiff for his share of the expenses. There is no evidence in the case tending to show such demand. Assuming, then, that there was an agreement either among the four original defendants, or between the two who are parties to this suit, that the expenses in procuring the attendance of witnesses and the services of counsel were to be on their joint account, and that the sums specified in these two items were proper advances or payments made by the defendant under that agreement, still the defendant has no cause of action against the plaintiff on account of them, until a demand upon him for his proportion. The general principle is, that where the cause of action arises upon a precedent debt or duty, no demand is necessary. It is clear that no debt or duty arises in favor of one of the parties to a general agreement to share in future

expenses, which are indefinite and contingent, until, upon accounting together, it is ascertained who had paid more than his just share of the whole expense, and who less, and how much less; thus determining in whose favor, and against whom, and for how much a cause of action exists; or until the party by whom the excess has been paid presents the account to him who is deficient, and demands its adjustment. It must be understood from the case that the agreement, if any existed, was to share, not in a specific liability of a certain and definite amount, but in the necessary expenses incident to the defence, the amount of which was indefinite, and could not be known at the time of the agreement. Such general agreement places the parties, *quoad hoc,* upon the footing of partners, and implies an accounting together, and a striking of balances, in respect to their joint transactions, before a liability is incurred by one to the other.

The defendant, then, being entitled to recover upon the first item in the set-off, but not upon the others, the verdict must be set aside, and judgment rendered in his favor for the balance due him on account of the first item, after deducting therefrom the seventy-five dollars loaned to him by the plaintiff, and interest thereon.